■ In the Matter of JOSHUA D. BERRY, Appellant, v CESAR A. PERALES, as Commissioner of the New York State Department of Social Services, et al., Respondents. [600 NYS2d 838] — Levine, J. Appeal from a judgment of the Supreme Court (Hughes, J.), entered March 27, 1992 in Albany County, which

---

dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondents terminating petitioner's employment.

Petitioner, an attorney admitted to practice in 1983, received a probationary appointment in January 1990 as an Attorney I in the Division of Legal Affairs of the State Department of Social Services (hereinafter DSS). Petitioner was assigned to the Medicaid Reimbursement Review Unit, principally responsible for appearing on behalf of DSS in administrative hearings involving claimed overpayments to health providers enrolled in the Medicaid program. As a probationary employee, petitioner was required to satisfactorily complete an initial six-month training period, in which case he would be advanced as a probationary Attorney II for an additional six-month training period. Upon satisfactory completion of that period, he would be appointed to a permanent civil service position as a Senior Attorney.

Because of illness resulting in an extended period of absence from work, petitioner did not complete his initial six-month training period until December 24, 1990. Petitioner received an evaluation of satisfactory for this period and, therefore, was advanced to an Attorney II position for the second probationary training period. Nonetheless, the performance appraisal of his Attorney I work indicated that he sometimes "dwelled on side issues even after being advised as to the manner in which they should be disposed * * * long after the issue was resolved at a * * * staff meeting".

In late June 1991, petitioner completed his second six-month training period. At that time, however, he received an unsatisfactory rating for the stated reasons of lack of advance preparation for administrative hearings, failure to listen to instructions from his supervisors and to what was being said during hearings and becoming "sidetracked" on irrelevant issues "even after being so advised". Although petitioner could have been terminated as a result of that unsatisfactory evaluation, DSS chose to extend his probationary period an additional six months. When his performance was again rated unsatisfactory at the end of that period, and in accordance with Department of Civil Service guidelines, he was terminated from State employment.

Petitioner then brought the instant CPLR article 78 proceeding to annul, *inter alia,* the first unsatisfactory rating he received and to require his advancement to the permanent civil service position of Senior Attorney. Supreme Court dismissed the petition and this appeal followed.

We affirm. Petitioner concededly was a probationary employee when his State employment was terminated. As such, he was subject to discharge without a reason and without a hearing, except upon his establishing that he was fired in bad faith or for constitutionally impermissible reasons, or that his discharge was violative of statute, regulations or case law (see, Matter of Whelan v Rozzi, 155 AD2d 603).

Petitioner's principal contention is that his discharge was impermissible because the unsatisfactory ratings he received were in retaliation for his exercise of his 1st Amendment right of free speech. It is true that "a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech" (Rankin v McPherson, 483 US 378, 383). However, because the State has a more legitimate interest as employer in regulating the speech of its employees than its interest in regulating the speech of its general citizenry, whether the employee's speech is constitutionally protected entails balancing "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees" (Pickering v Board of Educ., 391 US 563, 568 [emphasis supplied]).

Thus, when a governmental employee allegedly has been discharged for exercising his or her 1st Amendment right to freedom of expression, a two-step process is involved in determining whether a judicial remedy is available. First, it must be established that the speech was on a matter of public concern, as "determined by the content, form, and context of a given statement, as revealed by the whole record" (Connick v Myers, 461 US 138, 147-148). Then, it must be further determined whether the nature of the employee's speech in addressing a matter of concern, in content, form and context, outweighed the State's interest in removing employees whose conduct hinder effective and efficient fulfillment of its responsibility to the public, as involved in the particular case (Connick v Myers, supra, at 150-151).

Here, petitioner claims that he was rated as an unsatisfactory employee because of his persistent disagreement with his superiors and supervisors regarding the handling of the proceedings to which petitioner was assigned, aimed at recovering millions of dollars of overpayments allegedly made to radiologists and radiology groups enrolled in the Medicaid program, and, further, a disagreement over the method of presenting proof in hearings to exclude physicians from the Medicaid

program for providing substandard care to patients. Petitioner asserts that the disagreements over the handling of those cases involved the possible recovery of millions of dollars of Medicaid funds and were, therefore, of public concern. He further argues that his disputes with his superiors on those issues underlie the references in his evaluation reports to his being "sidetracked" on "irrelevant" issues for which he was criticized, and that this demonstrates that his discharge principally resulted from his expressions of opinion on matters of public concern.

Respondents unequivocally deny that petitioner's mere expressions of opinion on those issues had anything to do with his receiving an unsatisfactory rating following his second six-month training period, pointing to the fact that his disagreements were fully aired during his first six-month training period, following which he received a satisfactory rating. In our view, however, petitioner has failed to establish that his expressions of opinion were constitutionally protected, even assuming that they pertained to matters of public concern and that they causally contributed to his termination from State employment. Stripped to their essentials, when considered in their form, content and context, the expressions of opinion upon which petitioner relies to establish a retaliatory discharge for his exercise of 1st Amendment rights represent nothing more than disagreements with his superiors on either office policy or professional judgments (or both) regarding the handling of an important set of cases by his legal unit in DSS. He does not claim that the positions of his superiors that he opposed on these issues were dishonest or corrupt; at worst, he suggests that one of the disagreements may have involved ethical concerns. Insofar as the nature of his expressions of disagreement with his superiors was essentially over office policies, his 1st Amendment "interests * * * as a citizen, in commenting upon [such issues]" *(Pickering v Board of Educ., supra,* at 568), were of limited weight in the balancing process *(Connick v Myers, supra,* at 154). And, to the extent that the nature of petitioner's expressions represented his professional "views on matters of law and legal ethics as to which there was ground for difference of opinion * * * [h]is interest in being able to speak on these concerns, though legitimate, was [also] of a distinctly lesser order of magnitude" *(Giacalone v Abrams,* 850 F2d 79, 87).

Contrariwise, petitioner's persistent advancement of his own theories for handling the Medicaid radiologist overpayment cases to which he was assigned (despite prior resolution of

that dispute at a staff meeting) involved important, legitimate State concerns regarding efficiency, managerial authority and effective staff working relationships in his legal unit of DSS, entitled to great weight in the balancing process to determine whether petitioner's expression was constitutionally protected. "When employee speech concerning office policy arises from an employment dispute concerning the very application of that policy to the speaker, additional weight must be given to the supervisor's view that the employee has threatened the authority of the employer to run the office" *(Connick v Myers, supra,* at 153). Petitioner's stubborn adherence to his own opposing position demonstrated that petitioner's superiors "could hardly count on him to abide by and carry out Department polic[ies]" *(Giacalone v Abrams, supra,* at 88). Thus, we conclude that petitioner has not established any constitutionally founded exception to the State's untrammeled right to discharge him as a probationary employee.

Petitioner's alternative claims, that he was terminated in bad faith and in violation of respondents' own rules, may be disposed of with greater dispatch. There is ample documentation in the record of his supervisors' good faith, including, *inter alia,* (1) the initial evaluation of petitioner's performance as satisfactory despite his evidencing the same deficiencies which later contributed to the unsatisfactory rating he received after his second probationary period, (2) the efforts of petitioner's superiors and supervisors to assist him in correcting his deficiencies by detailed and fact-specific constructive criticisms in written memoranda furnished well before he received his first unfavorable evaluation, and (3) DSS legal staff's efforts to give petitioner additional training through holding mock hearings for the improvement of his forensic skills. The record contains clear documentation of specific instances of unsatisfactory performance on petitioner's part. Thus, petitioner has failed to meet his burden of showing bad faith *(see, Matter of King v Sapier,* 47 AD2d 114, 116, *affd on opn below* 38 NY2d 960; *see also, Matter of Johnson v Katz,* 116 AD2d 930, 931-932, *affd* 68 NY2d 649). Finally, the record clearly establishes that petitioner's probationary period was conducted by DSS staff in full conformity with the applicable regulations *(see,* 4 NYCRR 4.5).

Mikoll, J. P., Yesawich Jr. and Crew III, JJ., concur. Ordered that the judgment is affirmed, without costs.